In re WATERSIDE APARTMENTS, INC., Debtor.

BARCLAYSAMERICAN/BUSINESS CREDIT, INC., a Connecticut corporation, Plaintiff,

v.

Jeanette E. TAVORMINA and Justin P. Havee, Co-Trustees of Waterside Apartments, Inc., and Waterside Apartments, Inc., a Florida corporation, Miami National Bank, a National banking association, Chase Manhattan Bank, N.A., a National banking association, R.S. Grist Company, a Florida corporation, Mairal, Inc., a Florida corporation, B.W. Williams, in his capacity as Dade County Tax Collector, Department of Revenue of the State of Florida, and Jack Ankus, d/b/a Universal Properties, Defendants.

Bankruptcy No. 80–00481–BKC–SMW. Adv. No. 81–0487–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

Oct. 1, 1982.

Morris C. Brown, Miami, Fla., for plaintiff.

Louis Phillips, Miami, Fla., for co-trustees.

Daniel Lampert, Miami, Fla., for B.W. Williams, defendant.

Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for Waterside Apartments, Inc., defendant.

Timothy Norris, Miami, Fla., for Chase Manhattan Bank, N.A., defendant.

Leo Greenfield, North Miami, Fla., for R.S. Grist Co., defendant.

Smathers & Thompson, Miami, Fla., for Miami Nat. Bank, defendant.

William D. Townsend, Deputy Gen. Counsel, Tallahassee, Fla., for Dept. of Revenue.

Robert C. Eber, Miami, Fla., for Mairal, Inc.

Jack Ankus, d/b/a Universal Properties, Miami Beach, Fla., pro se.

Kenneth W. Whittaker, Miami, Fla., for Daniel Segal, defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon an Amended Complaint to Determine

Amount, Extent and Priority of Lien filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

That this Court has jurisdiction of the parties hereto and the subject matter hereof.

This is an adversary proceeding to determine the amount, extent, and priority of BarclaysAmerican/Business Credit, Inc. (BA/BCI) mortgage lien and security interest encumbering the primary assets of this estate. The plaintiff contends that all defendants made parties to this action may have, or claim to have, a lien against, or interest in, an apartment complex which forms the principal asset of this estate in bankruptcy. BA/BCI, further purports that if these alleged liens or interests do exist that they are subordinate, junior and inferior to the plaintiff's lien. Citibank, with the agreement of the parties, was permitted to intervene in this adversary proceeding to assert whatever right it may have to payment prior to payment of the first and second mortgage of BA/BCI.

From the uncontradicted evidence, this Court concludes that BA/BCI's mortgage liens are senior and superior to the liens, if any, of the defendants Chase Manhattan Bank, N.A., Miami National Bank, R.S. Grist Company, Mairal, Inc., Department of Revenue of the State of Florida, and Jack Ankus d/b/a Universal Properties. This Court finds that BA/BCI's mortgage liens encumber all of the real property of the debtor and secure a debt due to BA/BCI consisting of the principal sum of $528,357.24, accured interest of $38,011.88 as of September 24, 1981, plus interest of $217.13 per diem and loan charges set forth in the consolidated mortgage. The issues now before this Court involve the extent of the Tax Collector's lien and whether or not defendant Citibank has a super-priority claim.

In December, 1980, the debtor's estate was in dire need of funds to maintain the normal utility services necessary for the operation of the condominium. Subsequently, on December 29, 1980 the Court issued an Order Authorizing Borrowing of Funds. Citibank does not question BA/BCI's right to payment on its mortgages as it existed prior to the Court's December 29, 1980 Order Authorizing Borrowing of Funds. However, Citibank does submit that this Court Order of December 29, 1980 creates a super-priority in favor of Citibank. This order stated in part:

IT IS FURTHER ORDERED that the borrowing hereby authorized is to constitute an administrative expense entitled to the highest classification as to WATERSIDE APARTMENT INC.'S right under *11 U.S.C.A. § 503(b)(1)(A)* and *§ 507(a)(1).* As to the estate of TOWER 2450, INC. said borrowing shall constitute a first priority in payment over all existing obligations, *secured and unsecured,* as well as any unpaid costs of administration, in accordance with the provisions of *§ 116(2)* of the Bankruptcy Act. [Emphasis added].

This Order makes a clear distinction between Waterside Apartments, Inc. and Tower 2450, Inc., as to their respective liability to Citibank. Citibank has a first priority in payment over all existing obligations, secured and unsecured, as well as any unpaid costs of administration as to the estate of Tower 2450, Inc. As to Waterside Apartment Inc., Citibank has an administrative expense which is not a secured lien, or super-priority claim, but rather, an expense of administration which is in fact subordinate, junior and inferior to BA/BCI's secured lien. The apartment complex upon which Citibank alleges a claim was sold by Tower 2450, Inc. to Waterside Apartments Inc. on May 17, 1979, and as such is subject to all secured claims prior to any administrative expenses or unsecured claims.

In support of its position, Citibank offers this Court's Order of February 27, 1981 which authorizes the co-trustees to sell

units free and clear of liens, the proceeds of which will stand as substitute collateral for the real property, without affecting any priority among mortgagees. This Order further directed that after payment of closing costs, the co-trustees should deposit the remaining funds into the special escrow account [Tower 2450 Escrow Account] which this Court created on December 5, 1980. Citibank asserts they must receive priority over all funds later deposited into that account by a subsequent Order. The Order of sale specifically did not affect the priority of any secured claim and, hence, does not elevate Citibank's administrative claim to a super-priority claim. The deposit into the above-mentioned escrow account occurs only as an administrative convenience in maintaining a single account.

■ This Court will not unilaterally redetermine the priority of a claim to which all parties had ample opportunity to object or seek to have modified. Citibank could have insisted that the Order provide specifically for a super-priority claim. No objection was heard from Citibank.

This Court finds that Citibank [with the advice of counsel] purchased the Certificate of Indebtedness and accepted an unsecured priority against Waterside Apartments, Inc., the owner of the apartment complex.

The Dade County Tax Collector, in answer to plaintiff's complaint, reflected that the Tax Collector was a priority claimant in the sum of $162,292.89 as reflected by Proof of Claim attached to said answer.

■ This defendant subsequently filed an Amended Proof of Claim, which reduced the indebtedness to $150,339.76 which included both outstanding taxes due together with accured interest for the taxable years of 1980 and 1981. Thereafter, attorney for the co-trustees took exception to that portion of the claim which was for post-petition interest accruing subsequent to the filing of the bankruptcy petition.

Florida Department of Revenue Rule 12D—12.03 provides in pertinent part:

"In those cases where assessments on the current tax roll are involved in bankruptcy proceedings and the tax collector has been enjoined from collecting the taxes due, the tax collector is not prohibited from accepting full payment of the taxes due if offered. Penalties and interest are stayed once the property comes under the bankruptcy proceeding and do not commence until released from the proceeding. Upon release the penalties and interest shall commence until the tax is paid."

Pursuant to § 195.027(1) of the Florida Statutes, tax collectors must follow the rules promulgated by the Department of Revenue. Accordingly Rule 12D—12.03 prohibits interest from accruing on taxes due after a bankruptcy petition is filed.

Hence, the ad valorem tax liens on the real property which constitute the principal asset of the debtor's estate, do not include interest which has accrued post-petition.[1]

Therefore, from evidence presented, which was not contradicted, this Court concludes BA/BCI's mortgage liens are senior and superior to all other claims, except the ad valorem tax liens of the Dade County Tax Collector, and that such ad valorem tax liens do not include interest which has accrued post-petition.

A final judgment will be entered in accordance with these findings of fact and conclusions of law.

---

1. The Dade County Tax Collector's claim does not distinguish between pre-petition and post-petition interest. In the event the parties are unable to agree on the amount and extent of the unallowable post-petition interest the Court will hold an evidentiary hearing to determine the same.